IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br>vs<br>1) JACOBO GARCIA<br>2) ROLANDO ANTONIO PULA-MORETA<br>a/k/a Chichi<br>3) RICHARD MARTINEZ-CAMACHO<br>a/k/a Richie<br>4) CECIL STEPHEN DERWEER<br>Defendants | CRIMINAL 05-0071CCC |

**O R D E R**

The Court has before it the Objections to Presentence Investigation Report filed by defendant Rolando Pula-Moreta on January 30, 2006 (**docket entry 149**), the Addendum to Objections to Presentence Investigation Report filed by defendant Pula-Moreta on February 6, 2006 (**docket entry 153**), the United States' Reply to the Objections filed on February 9, 2006 (**docket entry 156**), and the Motion in Reply to Government's Objection filed by defendant Pula-Moreta on February 27, 2006 (**docket entry 164**).

Defendant Pula-Moreta has objected to the two-level upward adjustment for his role in the offense applied under U.S.S.G. §3B1.1(c), averring that he was not an organizer or facilitator of the offense as the U.S. Probation Officer concluded, but just a middleman. He has also challenged the accuracy of some of the financial information included in the Pre-Sentence Report (PSR), claiming that some of the properties listed as belonging to him are actually owned by others. The government, in its response, contends that the two-level managerial adjustment was properly applied, given that "without the participation of [defendant], the transaction would not have taken place" and that he was "decidedly not a peripheral player in the criminal activity." United States' Reply to Objections (docket entry 156), at p. 4, ¶5. As to the financial situation of defendant, the government requests the Court to initiate an inquiry as to who is paying for his legal representation.

We turn first to the disputed guideline sentencing adjustment. In determining whether a defendant was a manager or supervisor, a court should consider the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. U.S.S.G. §3B1.1, comment. (n.4). But merely acting as a "middleman" by directing customers to dealers is insufficient for a §3B1.1 adjustment, <u>United States v. Alred</u>, 144 F.3d 1405, 1422 (11th Cir.1998); <u>United States v. Magana</u>, 118 F.3d 1173, 1203 (7th Cir.1997), as is simply distributing drugs in a buyer-seller relationship, <u>United States v. Noble</u>, 246 F.3d 946, 954 (7th Cir. 2001); <u>Alred</u>, 144 F.3d at 1422. "Section 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership." <u>United States v. Yates</u>, 990 F.2d 1179, 1182 (11th Cir. 1993).

The description of the offense conduct contained in the PSR, which remains undisputed, does not reflect that defendant had a role beyond that of a mere "middleman." The PSR indicates that the illegal drug smuggling group to which defendant Pula-Moreta belonged was led by co-defendants Steven Cecil Derweer and Jacobo García and that he just assisted them. PSR, at ¶5. The PSR further relates that on February 24, 2005 the undercover agents met with García and defendant Pula-Moreta in St. Croix, where Pula-Moreta introduced García to the agents as his source of supply, and that the agents negotiated the purchase of 10 kilograms of cocaine with García, who repeatedly called Derweer asking him to bring a kilo of cocaine to show to the agents. PSR, at ¶8. It appears that later on that same date defendant met again with the undercover agents alone, but he did not bring any drugs to them. PSR, at ¶9. Co-defendants García and Derweer later arrived with the 10 kilograms of cocaine that the agents had agreed to buy. <u>Id.</u>

Given this factual scenario, it appears plainly evident that defendant only served to coordinate the meetings between buyers and sellers, but lacked authority, control, influence or leadership within the drug smuggling group. While it is true, as the government alleges, that without him the transaction probably would not have taken place, nevertheless his role in the offense lacked the trappings required to apply a major role adjustment under U.S.S.G. §3B1.1

as made by the U.S. Probation Officer and defended by the United States. Accordingly, defendant's objection to the two-level upward adjustment under U.S.S.G. §3B1.1 is SUSTAINED.

As to the objection to the accuracy of the financial information contained in the Pre-Sentence Report, we note that it boils down to whether defendant owned two parcels of land in the Dominican Republic, one valued at $3,000.00 which he now claims is actually owned by his mother, and another valued at $2,500.00 which he indicates belongs to his wife. Aside from those two properties, the PSR does not attribute any other assets to defendant, and lists debts amounting to $2,100.00. It also notes that defendant has retained counsel. Based on that information, the PSR concludes that defendant has "significant assets" and the ability to pay a fine. PSR at ¶53. Still, even if we were to consider both properties as belonging to defendant, we would not consider the imposition of a fine as part of defendant's sentence.[1] Thus, whether the properties at issue in fact belonged to defendant or to third parties is of no consequence here. Defendant's objection is OVERRULED AS MOOT.

SO ORDERED.

At San Juan, Puerto Rico, on April 26, 2006.

S/CARMEN CONSUELO CEREZO
United States District Judge

---

[1] The government makes much ado about the fact that defendant has retained counsel, and asks us to inquire from defendant who is paying his attorney, claiming that said information is needed both to determine his financial capacity and whether there is a conflict of interest if a third party is paying for his attorney. The government has not suggested that counsel has been paid from illegal proceeds. Given defendant's limited financial resources as reflected in the PSR, it is not unreasonable to assume that payment is being made by a third party. Indeed, the government's request accepts that possibility, but fails short of imputing defense counsel with a violation of ABA Rule of Professional Conduct 1.8(f), which allows third-party payment of attorney's fees as long as the client consents and there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship. We will not assume that Rule 1.8(f) has been violated, nor embark on an inquiry to so determine absent a reasonable basis which would justify it. Accordingly, the government's request for an inquiry on the source of defendant's attorney's fees is DENIED.